IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CLIFTON RAY OLIVER,<br><br>Plaintiff,<br><br>vs.<br><br>TARA ELLIOT, GUY BAKER, U.S. MARSHAL MARVIN GOFFENA, U.S. MARSHAL MARTINEZ, and JOHN DOE MARSHALS.<br><br>Defendants. | CV 13-00224-M-DWM-JCL<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

**I. Statement of the Case**

    **A.**    **Procedural Background**

Oliver filed his Complaint on October 30, 2013 (Doc. 2) and filed a First Amended Complaint on February 14, 2014 (Doc. 7). By Order dated May 13, 2014, the Amended Complaint was directed to be served upon Defendants Tara Elliott, Guy Baker, Randy Martinez, and Marvin Goffena. (Doc. 13.) These Defendants filed an Answer on September 5, 2014. (Doc. 21.) On September 22, 2014, Defendants filed a Motion to Substitute the United States as a Party and to Dismiss Oliver's Tort Claims against the Federal Defendants (Doc. 28) and a Motion to Dismiss for Failure to State a Claim or in the alternative a Motion for

1

Summary Judgment. (Doc. 31.)

On November 17, 2014, this Court issued an Order allowing Oliver to file a Second Amended Complaint and requiring Defendants to file supplemental briefing on their Motion for Summary Judgment as it related to the Second Amended Complaint. (Doc. 56.) The Court also issued recommendations that Defendants' Motion to Substitute the United States as the Defendant on the Tort Claims against the Federal Defendants and to Dismiss those claims (Doc. 28) should be granted and Oliver's Motion to name additional defendants be denied. (Doc. 57.) Those recommendations were adopted on January 9, 2015. (Doc. 84.)

Accordingly, at issue is Defendants Elliot, Baker, Goffena and Martinez's Motion for Summary Judgment on Oliver's Bivens claims alleging a denial of due process and equal protection emanating from his detention in segregation as a federal pretrial detainee. (Doc. 31.) The operative complaint is Oliver's Second Amended Complaint. (Doc. 57.)

The summary judgment standard was presented in the Court's November 17, 2014 Order (Doc. 56 at 4-5) and will not be repeated herein.

**B. Factual Background**

Oliver was arrested on February 2, 2012 as part of a prostitution string operation in Missoula. He was charged in Montana state district court with

promoting prostitution. On February 13, 2014, a Second Amended Information was filed charging Oliver with one count of promoting prostitution and one count of tampering with a witness. (Information, Doc. 35 at 91-93.) On February 18, 2014, Oliver plead guilty to the one count of tampering with a witness. (Transcript, Doc. 35 at 95-121.) The Second Amended Information, alleged that sometime between March 14, 2012 and May 22, 2012, Oliver committed the offense of tampering with witness. (Information, Doc. 35 at 91.) At the change of plea hearing, Oliver admitted that he attempted to send a letter to a witness with the intent to suggest that the witness not appear for court. (Oliver's testimony in State Court Change of Plea Hearing, Transcript, Doc. 35 at 109-110.)

Four letters were intercepted by Missoula County Detention Facility staff between March 8, 2012 and March 29, 2012 while Oliver was detained on state charges. These letters were written to Alida Lattimore, the woman arrested with Oliver, and others and contained statements such as "I know for sure you won't come to court on me & I know you love me the same." (March 8, 2012 Letter, Doc. 61 at 8); "I don't want people out their [sic] thinking you snitched!" (*Id.*); "I want you to stay strong and stay out of the way." (March 8, 2012 Letter, Doc. 61 at 8-9); "If I go to trial my case will get dismissed cause you didn't show ask any lawyer babe." (*Id.*); "I told my attorney I know for a fact you won't show, to none

of my hearings or even go to court on yours till I'm done & out." (March 22, 2012 Letter, Doc. 61 at 29); "But I can get a misdemeanor plea bargain anytime before then if they can't contact her to meet with her. I know she ain't selling me out & putting me in prison to avoid having a misdemeanor on her record." (March 27, 2012 Letter, Doc. 61 at 16); "I told my attorney it would be hard for anyone to contact you and that you will most likely not come because you don't want me in prison." (March 29, 2012 Letter, Doc. 61 at 32.)

Defendants contend these letters show Oliver's attempts to encourage Ms. Lattimore to not cooperate with law enforcement or appear at a hearing. Some of the letters had been sent utilizing other inmates.

In addition, Missoula County Detention Facility staff verified 28 phone calls from Oliver's pod at the jail to Ms. Lattimore's cell phone between April 19, 2012 and May 15, 2012. (Doc. 61 at 47.)[1] But Oliver only actually spoke with Ms. Lattimore on April 19, 2012 in a one minute conversation. [2]

---

[1] Defendants submitted additional evidence implying that Oliver also attempted to call another possible witness in Spokane, Washington. Oliver disputes making these calls. The statements of this individual to Detective Baker are inadmissible hearsay and the phone records have been redacted leaving the Court with insufficient evidence to support a finding that Oliver had attempted to make these calls. (Incident report and phone records, Doc. 61 at 18-24.)

[2] Oliver has filed a recording of this conversation (Audio of April 19, 2012 call, conventionally filed as Doc. 91) and argues that Baker mischaracterized the

4

While incarcerated on the referenced state charge, on April 4, 2012, Oliver was indicted in this Court on federal charges of: (1) transportation of a minor with intent to engage in criminal sexual activity; (2) transportation of a person with intent to engage in criminal sexual activity; and (3) obstruction of justice–witness tampering through corrupt persuasion. (*U.S. v. Oliver*, CR 12-19-M-DLC, Doc. 1.) Oliver was arraigned on those charges on April 16, 2012. (CR 12-19-M-DLC, Doc. 7.) A Superseding Indictment was filed on May 17, 2012 (CR 12-19-M-DLC, Doc. 33) with Oliver being arraigned on those charges on May 21, 2012. (CR 12-19-M-DLC, Doc. 36.)

On May 21, 2012, Deputy U.S. Marshal Goffena received two additional hand written messages from staff at the Missoula County Detention Facility which had been turned in by a prisoner being released from custody on May 20, 2012. (Messages, Doc. 36 at 11-13.) The prisoner reported that Oliver gave him the messages and wanted him to call the number on the short note and read the entire letter to the person. The prisoner had been housed in the same pod as Oliver and reported that he was afraid of Oliver. Deputy U.S. Marshal Goffena brought the

---

contents of that conversation in his report. (May 23, 2012 Report, Doc. 61 at 44.) The Court has reviewed the recording but Defendants' concerns regarding Oliver's tampering with witnesses arise primarily from the letters which Oliver admits he wrote. The letters stand on their own.

information to the attention of Assistant U.S. Attorney Elliott, the prosecutor in Oliver's federal case. (Statement of Undisputed Facts, Doc. 32 at ¶ 41 citing Goffena Declaration, Doc. 36 at ¶ 4; Elliott Declaration, Doc. 34 at ¶ 5.)

On May 23, 2012, Tracie Groenier with the United States Marshal's Service sent an e-mail to Elliot stating that Guy Baker was going to talk to her about isolating Clifton Oliver from the rest of the prison population. (May 23, 2012 e-mail, Doc. 34 at 8.) Elliot responded to Groenier's e-mail stating: "Please separate Oliver as he is continually attempting to intimidate the witnesses in his case. He should not be able to access the phone or be able to give inmates letters. . . ." (May 23, 2012 e-mail response, Doc. 34 at 8; Elliott Declaration, Doc. 34 ¶ 6.) This information was provided to the Missoula County Detention Facility on May 23, 2012 by Goffena. (Statement of Undisputed Facts, Doc. 32 at ¶ 42 citing Goffena Declaration, Doc. 36 at ¶ 4; Alert Notice, Doc. 36 at 14.) Oliver was placed in administrative segregation that same day. (Second Amended Complaint, Doc. 46-1 at 11, ¶ 65.)

On May 25, 2012, Oliver was transferred from the Missoula County Detention Facility to the Ravalli County Detention Facility by Deputy U.S. Marshal Goffena. (Goffena Declaration, Doc. 36 at ¶ 5). Goffena prepared an Alert Notice that indicated Oliver had witness intimidation and smuggling issues,

6

was an escape risk, violent, and could only make phone calls to his attorney of record and only receive mail from, or send mail to his attorney. He was to have no visits or outside contact without USMS approval. (Statement of Undisputed Facts, Doc. 32 at ¶ 44 citing Alert Notice, Doc. 36 at 16; Goffena Declaration, Doc. 36 at ¶ 7.)[3]

The Federal Bureau of Prisons facility at the Federal Detention Center located in SeaTac, Washington, (SeaTac) took custody of Oliver for a Court ordered mental capacity evaluation on August 27, 2012. It was SeaTac's practice in 2012 to segregate a person admitted for a mental capacity exam in the Special Housing Unit for a period of time to determine whether the facility felt safety issues could exist. (Statement of Undisputed Facts, Doc. 74 at ¶ 63 citing Straight Declaration, Doc. 72, at ¶ 2.) Oliver was in the Special Housing Unit from August 27, 2012, until September 10, 2012, at which time he was released to the general population. He stayed in general population until his release from SeaTac

---

[3]Defendants submitted evidence that on August 14, 2012, Goffena sent an e-mail to Elliott indicating that he had received a call from Sgt. Rick Hardy at the Ravalli County Detention Center regarding Oliver. Sgt. Hardy's statements constitute inadmissible hearsay. *See, e.g., Anheuser–Busch v. Natural Beverage Distrib.*, 69 F.3d 337, 345 n. 4 (9th Cir. 1995); *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 851 (9th Cir. 1990); *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980). As Oliver disputes the truth of Sgt. Hardy's statements, this evidence will not be considered on this motion.

sometime around October 11, 2012. (Straight Declaration, Doc. 72, at ¶¶ 2-3.) Housing decisions at SeaTac are based on many factors including security factors, consultation with medical or mental health providers, space in the facility itself, whether the person is convicted or a pretrial detainee and other factors. The Bureau of Prisons ultimately has the authority to make housing decisions based on all available information to ensure the safety of the staff, the inmates and the general public. (*Id.* at ¶ 4.)

Oliver alleges Elliott played a role in his housing placements at SeaTac but has failed to present any evidence to support this allegation. Elliott, however, has not denied Oliver's allegation that she played a role in SeaTac's housing decisions.

Oliver was returned to the Missoula County Detention Facility on October 15, 2012. From October 15, 2012 until October 29, 2012, Oliver was held in Pod 3B, a "classification" pod where people are placed pending assignment to a "population" pod based on their age, criminal history, current charges, recent behaviors, risk factors, and other special needs. Mark Harris from the Missoula County Detention Facility, testified in his declaration that inmates in Pod 3B were in lockdown approximately half the day. (Statement of Undisputed Facts, Doc. 74 at ¶ 64 citing Harris Declaration, Doc. 65 at ¶ 3). Oliver alleges that before he was

moved to Pod 3B he was held for three days on 23 hour lockdown and was only allowed out in the day room for only one hour to shower and exercise. (Statement of Disputed Facts, Doc. 79 at 14 citing Oliver Declaration, Doc. 78-1 at 7, ¶ 19.)

Concerned that witness intimidation would continue, Baker sought to have the Marshals Service request that Oliver be segregated and not allowed to use the phone. The request was referred to Assistant U.S. Attorney Elliot. (Statement of Undisputed Facts, Doc. 74 at ¶ 51 citing Baker Declaration, Doc. 73 at ¶ 21.) By letter dated October 26, 2012, Elliott wrote a letter directing the Marshals Service to request the Detention Center to segregate Oliver and prohibit him access to telephones. (Letter, Doc. 34 at 9.)

On October 29, 2012, the Marshals Service was informed that the Detention Facility could not accommodate Elliott's request due to lack of sufficient administrative segregation cells. The Detention Facility advised that a court order would be necessary to effect full segregation of Oliver. (Statement of Undisputed Facts, Doc. 74 at ¶ 67 citing Harris Declaration, Doc. 65 at ¶7.)

Oliver was held in Pod 3A, the sex offender unit at Missoula County Detention Facility, from October 30, 2012 to November 5, 2012 where he had full access to other prisoners and the phone. On November 5, 2012, Oliver was reclassified to administrative segregation for disciplinary detention for eight days

9

for fighting. (Statement of Undisputed Facts, Doc. 74 at ¶ 68 citing Harris Declaration, Doc. 65 at ¶¶ 8-9.) He was held in administrative segregation until November 13, 2012 when he was moved to a single lockdown cell for disciplinary detention. (Statement of Undisputed Facts, Doc. 74 at ¶ 69 citing Harris Declaration, Doc. 65 at ¶ 10.)

On November 15, 2012, Oliver was reclassified back to Pod 3C where he again was allowed access to other prisoners and the phone. Pod 3C is where Missoula County Detention Facility houses offenders under 45 years of age who have significant criminal histories or a history of serious infractions in jail. (Statement of Undisputed Facts, Doc. 74 at ¶ 70 citing Harris Declaration, Doc. 65 at ¶ 11.) On December 13, 2012, Oliver was again moved to administrative segregation on suspicion of assault on another inmate. From December 30, 2012 until February 1, 2013, Oliver was housed in Pod 2C in a single lockdown cell due to his fights with other inmates. (Statement of Undisputed Facts, Doc. 74 at ¶ 71 citing Harris Declaration, Doc. 65 at ¶¶ 12 -13.)

Oliver was transferred to Crossroads Correctional Center where he was incarcerated from February 1, 2013 through February 7, 2013. In making the classification decision regarding Oliver, Crossroads considered his current charges, his criminal history, a notation of violent tendencies, and a request that he

be keep separate from another inmate. (Statement of Undisputed Facts, Doc. 74 at ¶ 78 citing Sherrard Declaration, Doc. 69 at ¶¶ 1-4.) Contrary to Oliver's assertion, Crossroads has no record of any notation from Goffena – or for that matter from anyone – reporting that Oliver had spit at a judge or assaulted a U.S. Attorney. (Statement of Undisputed Facts, Doc. 74 at ¶ 78 citing Sherrard Declaration, Doc. 69 at ¶ 4.)

Oliver was transferred to the CCA Nevada Southern Facility where he was held from February 7, 2013 until February 21, 2013 and from May 3, 2013 until May 7, 2013. (Statement of Undisputed Facts, Doc. 74 at ¶ 74 citing Zavala Declaration, Doc. 70 at ¶ 3.) Oliver was housed in the Nevada Southern administrative segregation unit because of security concerns due to the serious nature of the charge of transporting a minor and an adult across state lines for sexual purposes, his prior conviction of transporting a minor, his criminal history for felony assault as well as revocation of supervised release, and convictions for robbery and domestic violence. In addition, the comment portion of the Form 129 reflected assaultive behavior, violent tendencies, and medication issues. Finally, there was a request for separation from another inmate which is a significant issue. Nevada Southern has so many prisoners coming and going, if there is a separation request, segregation is often used as it is difficult to monitor separation due to the

large volume of prisoners coming into the facility. (Statement of Undisputed Facts, Doc. 74 at ¶ 74 citing Zavala Declaration, Doc. 70 at ¶ 5.) Nevada Southern has no record of any person reporting that Oliver spit on a judge or attacked a U.S. Attorney or had hepatitis C. (Statement of Undisputed Facts, Doc. 74 at ¶ 77 citing Zavala Declaration, Doc. 70 at ¶ 6.)

Oliver was committed to the U.S. Medical Center for Federal Prisoners ("FMC") pursuant to 18 U.S.C. § 4241(d), from February 27, 2013, through April 25, 2013. (Statement of Undisputed Facts, Doc. 74 at ¶ 79 citing Pietz Declaration, Doc. 68 at ¶¶ 1-2.) Oliver was assigned to a single-occupancy cell in a locked unit during this time. His denial of mental illness despite a well-documented history of such, his refusal to participate in treatment, and his refusal to take medication led to the Forensic Psychologist treating Oliver to have continued concerns regarding his stability and potential risk towards others if released to the general population. (Statement of Undisputed Facts, Doc. 74 at ¶ 79 citing Pietz Declaration, Doc. 68 at ¶ 4.) Oliver was not segregated from phone calls. (*Id.* at ¶ 5.)

Oliver alleges the USMS 129 forms and alert notices with allegations that Oliver was dangerous played a major role in him being placed in isolation at FMC. He also disputes that he refused to participate in treatment or take medication. He

admits, however, that he refused to sign an agreement that FMC is not responsible if medications cause irreversible side effects or death. (Statement of Disputed Facts, Doc. 79 at 17-18.)

On May 7, 2013, Oliver was transferred back to Missoula County Detention Facility where he was reclassified to Pod 3C due to his history of assaults and of being a management problem. On June 18, 2013, Oliver was returned to state custody after the dismissal of the federal case. (Statement of Undisputed Facts, Doc. 74 at ¶ 72 citing Harris Declaration, Doc. 68 at ¶¶ 15-17.)

## II. Analysis

The Court has construed Oliver's federal claims as alleged violations of his Fifth Amendment rights to due process and equal protection as a pretrial detainee. *Simpson v. United States*, 342 F.2d 643 n. 1 (7th Cir. 1965); *Ducharme v. Merrill-Nat'l Lab.*, 574 F.2d 1307, 1310 (5th Cir. 1978).

Due process requires that a pretrial detainee not be punished prior to a lawful conviction. *Bell v. Wolfish*, 441 U.S. 520, 535. The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some legitimate government purpose. *Bell*, 441 U.S. at 538.

As set forth in the Court's prior Order, Oliver fails to allege facts showing

13

that his initial placement in segregation was imposed as a punishment. There is no indication that the placement in segregation at the Missoula County Detention Facility and the Ravalli County Detention Facility was arbitrary or purposeless; indeed, the record reflects that Oliver was placed in segregation because of his efforts to contact witnesses in his criminal case. Although Oliver argues in his Second Amended Complaint that Defendant Baker altered and/or falsified evidence regarding the witness tampering charge, Oliver does not deny that he plead guilty to attempting to tamper with a witness against him between March 8, 2012 and May 22, 2012. Moreover, Oliver does not dispute giving letters to other inmates to have them send them after they were released from Missoula County. Thus, the Court finds this restriction reasonable at least until after Oliver left Ravalli County on August 27, 2012.

Based upon the undisputed evidence presented by Defendants, Oliver was placed in segregation from August 27, 2012 until September 10, 2012 when he was sent to SeaTac. But it is undisputed that SeaTac has all their inmates remain in segregation upon entering SeaTac. Defendants cannot be liable for Oliver's placement in segregation from August 27, 2012 until September 10, 2012.

Oliver was moved between a number of facilities from the time he left SeaTac on October 11, 2012 until he was placed back into state custody in June

14

2013. Although Oliver was placed in administrative segregation/disciplinary detention/lockdown for the majority of this time, Defendants have submitted undisputed testimony that the decisions to place him in segregation were made primarily separate and apart from the actions of the Defendants named in this case. Although there is some testimony that Alert Notices were considered in classification decisions, those forms do not appear to be the sole or even primary basis for Oliver being segregated. In fact, it appears Oliver was generally segregated for disciplinary and/or security issues.

Oliver alleges Goffena did an alert notice on January 31, 2013 stating that Oliver should be placed in protective custody because he was assaultive, supposed to have HIV/Hep C, spit at a judge, and attacked/assaulted the U.S. Attorney after sentencing. (Second Amended Complaint, Doc. 46-1 at 21.)[4] Defendants specifically deny creating any such alert form. (Goffena Declaration, Doc. 64 at ¶ 3; Martinez Declaration, Doc. 66 at ¶ 5.) Furthermore, officials at Crossroads and the Nevada Southern Detention Center deny having any record of such an alert form. (Zavala Declaration, Doc. 70 at ¶ 6; Sherrard Declaration, Doc. 69 at ¶ 4.)

Moreover, none of the facilities which housed Oliver from August 2012

---

[4]The Court is not aware of a sentencing hearing prior to January 31, 2013 but does note that Oliver's competency hearing was held on January 22, 2013. (CR 12-19-M-DLC, Doc. 99.)

15

until June 2013 appear to have relied on any such alert form in making the housing/classification decisions regarding Oliver.

As to Elliott's October 26, 2012 letter to the Missoula County Detention Facility requesting Oliver's segregation, the Detention Facility refused to act on Ms. Elliott's letter and requested a court order to comply with the request. His ultimate placement in segregation for assaultive conduct was of his own making.

As the decisions to place Oliver in segregation after August 27, 2012 were not made by Defendants and were not significantly affected by Defendants, Oliver has failed to present a genuine issue of material fact regarding whether Defendants are responsible for his placement in segregation from August 27, 2012 until June 2013.

Based on the foregoing, the Court issues the following:

## RECOMMENDATIONS

1. Defendants' Motion for Summary Judgment should be **GRANTED**.

2. The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith. The record makes plain the instant

Complaint is frivolous as it lacks arguable substance in law or fact.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Oliver may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[5] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 31st day of March, 2015.

                                                   */s/ Jeremiah C. Lynch*
                                                   Jeremiah C. Lynch
                                                   United States Magistrate Judge

---

[5] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.