IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

MAY 1 5 2015

Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| CLIFTON RAY OLIVER, | CV 13–224–M–DWM–JCL |
| Plaintiff, | |
| vs. | ORDER |
| TARA ELLIOTT, GUY BAKER, U.S. MARSHAL MARVIN GOFFENA, U.S. MARSHAL MARTINEZ, and JOHN DOE MARSHALS, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Clifton Ray Oliver, appearing pro se, alleges in his Second

Amended Complaint denial of his due process and equal protection rights as a

result of his detention in segregation as a federal pretrial detainee. (Doc. 57.)

Defendants filed a Motion to Dismiss for Failure to State a Claim or in the

alternative a Motion for Summary Judgment. (Doc. 31.) Magistrate Judge

Jeremiah Lynch entered Findings and Recommendations on March 31, 2015,

recommending that Defendants' Motion for Summary Judgment be granted. (Doc.

96.) Oliver filed objections to the Findings and Recommendations on April 20,

-1-

2015, (Doc. 97), and Defendants filed a response on May 1, 2015, (Doc. 98).

Oliver is entitled to de novo review of the specified findings or recommendations

to which he objects. 28 U.S.C. § 636(b)(1). His objections encompass the entirety

of the Findings and Recommendations.

## DISCUSSION

Oliver objects to the findings of fact and analysis in the Findings and

Recommendations that relate to his segregation in multiple facilities.

Additionally, Oliver insists that he requested a continuance so he could conduct

further discovery to gather evidence he claims would corroborate the genuine

material factual disputes that exist and that his request was ignored. According to

Defendants, the Findings and Recommendations should be adopted because Judge

Lynch's careful review of the facts show Defendants are entitled to summary

judgment on their claim of qualified immunity. For the reasons stated below,

Oliver's objections are overruled, his request for a continuance is denied, and

Defendants' Motion for Summary Judgment is granted.

## I.     Qualified Immunity

Courts apply a two-part test in evaluating qualified immunity: "whether

plaintiff's allegations, if true, establish a constitutional violation," and whether the

defendants' actions violated "clearly established statutory or constitutional rights

of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002) (internal quotation marks omitted). The facts must be viewed in the light most favorable to plaintiff. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

"Pretrial detainees have a substantive due process right against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "This right is violated if restrictions are 'imposed for the purpose of punishment.' There is no constitutional infringement, however, if restrictions are 'but an incident of some other legitimate government purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 535) (internal citation omitted). "In distinguishing between a permissible restriction and impermissible punishment, [courts] first examine whether the restriction is based upon an express intent to inflict punishment. . . . [and] next consider whether punitive intent can be inferred from the nature of the restriction." *Id.* Here, there is no indication Defendants had an express intent to inflict punishment on Oliver. As to whether punitive intent can be inferred, "'if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* (quoting *Bell*, 441 U.S. at 539).

Oliver objects to the analysis in the Findings and Recommendations that relate to his segregation at the Missoula County Detention Facility beginning May 23, 2012; the Federal Detention Center in SeaTac, Washington, in August and September, 2012; the Missoula County Detention Facility in October, 2012; and Crossroads Correctional Center, the CCA Nevada Southern Detention Center, and the U.S. Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri from February through May, 2013. (Doc. 97.)

## A.      Missoula County Detention Facility beginning May 23, 2012

Oliver was placed in administrative segregation at the Missoula County Detention Facility on May 23, 2012, because Oliver was attempting to intimidate witnesses in his case. (Docs. 34, 36.) The government has a legitimate interest in preventing witness tampering. *Jones v. Horne*, 634 F.3d 588, 597–600 (D.C. Cir. 2011); *Haraszewski v. Brannan*, 2013 WL 4516776, at **9–10 (S.D. Cal. Aug. 21, 2013) (slip copy). Oliver's segregation "was reasonably related to this interest," *Valdez*, 302 F.3d at 1046, and it therefore does not amount to punishment. Oliver insists his segregation was instigated by FBI Task Force Officer Guy Baker rather than Deputy U.S. Marshal Marvin Goffena. (Doc. 97 at 1–5.) This distinction is immaterial. Regardless of who alerted Assistant U.S. Attorney Tara Elliott to Oliver's attempts to contact a witness in his case, it is undisputed Oliver was

placed in administrative segregation because of his attempts to contact the witness. (Docs. 32 at ¶¶ 41–42; 79 at ¶¶ 41–42.) Oliver also insists that portions of Baker's reports documenting Oliver's witness tampering between March 14 and May 22, 2012, (*see* Doc. 61), are false. (Doc. 97 at 1–5.) Yet it is undisputed Oliver subsequently plead guilty to one count of witness tampering for his attempts to contact the witness between March 14 and May 22, 2012. (Doc. 35 at 91–92, 95–121.) Oliver's objection is overruled.

**B.     SeaTac Federal Detention Center in August and September, 2012**

Oliver was placed in segregation when he arrived at the SeaTac Federal Detention Center on August 27, 2012, and he remained in segregation until September 10, 2012. Oliver was placed in segregation because it was SeaTac's practice at that time to segregate a person admitted for a mental capacity examination for a period of time to determine whether safety issues exist. (Doc. 72.) The government has a legitimate interest in maintaining security and order in operating an institution. *Bell*, 441 U.S. at 540 n.23. Because Oliver's segregation "was reasonably related to this interest," *Valdez*, 302 F.3d at 1046, it does not amount to punishment. Oliver insists that correspondence from Elliott to SeaTac played a significant role in his placement in segregation. (Doc. 97 at 5–6.) Elliott did not deny playing a role in SeaTac's housing decision, and her declarations

express her continued concern about Oliver contacting the witness in his case both before and after his time at SeaTac. (Docs. 34, 63.) Yet drawing the inference that Elliott did play a role in Oliver's placement in segregation at SeaTac does not change the conclusion that the segregation did not amount to punishment. Elliott's declaration shows that her requests to have Oliver isolated were based on the legitimate governmental interest of protecting the witness in Oliver's case. (Docs. 34, 63.) Oliver's objection is overruled.

## C.    Missoula County Detention Facility in October, 2012

Oliver returned to the Missoula County Detention Facility on October 15, 2012, and was held in a "classification" pod until October 29. Oliver was held in that pod due to a previous request from the U.S. Attorney's Office to not allow access by Oliver to the phone because of his repeated attempts to contact the witness. (Doc. 65.) Because the government has a legitimate interest in preventing witness tampering, *Jones*, 634 F.3d at 597–600, and Oliver's segregation "was reasonably related to this interest," *Valdez*, 302 F.3d at 1046, it does not amount to punishment. According to Oliver, he was in 23-hour lockdown in the classification pod rather than half-day lockdown, as stated in County Housing Unit Manager Mark Harris's declaration, to restrict Oliver's access to the phone. (Doc. 97 at 6–8.) Yet drawing an inference that Oliver was

on 23-hour lockdown does not change the conclusion that his segregation did not amount to punishment. The distinction as to the extent of his isolation is immaterial, as it is undisputed that the decision to isolate Oliver from the phone was because of his continued attempts to contact the witness in his case, and not to inflict punishment. (Doc. 65 at ¶¶ 3–5.) Oliver's objection is overruled.

### D.     Crossroads Correctional Center, the CCA Nevada Southern Detention Center, and USMCFP Springfield from February through May, 2013

Oliver was transferred to Crossroads Correctional Center on February 1, 2013, and held there until February 7. Oliver was placed in segregation due to his "serious" felony charges, "significant" criminal history, a request for separation from another inmate, and comments in his paperwork noting violent tendencies, assaultive behavior, being a sexually violent predator, and medical issues. (Doc. 69 at ¶ 3.) Oliver was transferred to the CCA Nevada Southern Facility, where he was held from February 7 to February 21 and May 3 to May 7, 2013. Oliver was held in administrative segregation because of security concerns as a result of his current charges, criminal history, comments on the Form 129 regarding assaultive behavior, violent tendencies, and medication issues, and a request for separation from another inmate. (Doc. 70 at ¶ 5.) Oliver was committed to USMCFP Springfield from February 27 to April 25, 2013. He was assigned to a single-

occupancy cell in a locked unit because it was standard procedure to assign

inmates to those cells who were designated to the facility for a forensic evaluation.

(Doc. 68 at ¶ 3.) Oliver remained in a secured setting due to a "continued concern

about his stability and potential risk he posed towards others if he were released to

a general population housing unit." (*Id.* at ¶ 4.) Because the government has a

legitimate interest in maintaining security and order in operating its institutions,

*Bell*, 441 U.S. at 540 n.23, and Oliver's segregation in these three facilities "was

reasonably related to this interest," *Valdez*, 302 F.3d at 1046, it does not amount to

punishment. Oliver insists that Alert Notices exist that were prepared by the U.S.

Marshals and that the Alert Notices played a significant role in his placement in

segregation at these facilities. (Doc. 97 at 9–13.) Yet drawing the inference that

the Alert Notices exist does not change the conclusion that Oliver's segregation

did not amount to punishment. The many legitimate reasons given by the facilities

to justify their security concerns and placement decisions overcome Oliver's

argument that Alert Notices played a central role in his placement. (*See* Docs. 68,

69, 70.) Oliver's objection is overruled.

## E. Remaining Objections

Oliver's objection to the conclusion that he failed to present a genuine issue

of material fact regarding whether Defendants are responsible for his placement in

segregation after he was transferred to SeaTac, (Doc. 97 at 13), is overruled. As discussed above, the facilities located outside of Missoula made legitimate placement decisions based on their own procedures and security assessments of Oliver. Oliver's objection to the recommendation that any appeal would not be taken in good faith, (Doc. 97 at 14–16), is also overruled. Under de novo review, the record makes plain that the Second Amended Complaint is frivolous and lacks arguable substance in law or fact.

## II. Request for Continuance

Oliver requests a continuance to perform additional discovery under Federal Rule of Civil Procedure 56(d). The party seeking additional summary judgment discovery bears the burden to proffer sufficient facts to show that the evidence sought exists and that it would prevent summary judgment. *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 (9th Cir. 2009). Oliver has not met his burden. Oliver seeks correspondence between SeaTac and Elliott, lockdown log books, and Alert Notices. (Doc. 97 at 6, 8, 10.) All inferences as to this evidence have been drawn in Oliver's favor and do not change the conclusion that his placement in segregation did not amount to punishment. As the evidence would not prevent summary judgment, Oliver's request is denied.

Viewing the facts in the light most favorable to Oliver, a reasonable jury

would not conclude that Oliver's segregation amounted to punishment to constitute a constitutional violation. Defendants are entitled to qualified immunity.

Accordingly, IT IS ORDERED that the Findings and Recommendations (Doc. 96) are ADOPTED to the extent they are consistent with this Order.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 31) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court is directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that the Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Federal Rule of Appellate Procedure 24(a)(3)(A) that any appeal of this decision would not be taken in good faith. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

DATED this _15th_ day of May, 2015.

Donald W. Molloy, District Judge
United States District Court

-10-